**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Criminal No. 19-cr-00198 (RDM)** |
| **WALTER LEE,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MOTION FOR A DOWNWARD DEPARTURE AND**
**MEMORANDUM IN AID OF SENTENCING**

The United States of America respectfully moves for a downward departure, pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 5K1.1, and submits this memorandum in aid of sentencing.

For more than a year, putting profit over the public interest, Defendant Walter Lee ("defendant" or "Lee") abused his official position for his personal gain. Lee, an employee of the Washington, D.C. Metropolitan Police Department ("MPD"), received more than $15,000 in cash bribes to unlawfully disclose non-public police paperwork identifying individuals involved in traffic accidents. Lee provided the information to Raquel DePaula, a "runner," who operated a for-profit business, which connected accident victims with lawyers and medical services. Defendant corrupted the MPD and violated its policies enacted to protect accident victim confidentiality. This breach of the public trust merits significant punishment—to punish the crime, deter it, and protect the integrity of local government. Nevertheless, defendant also provided substantial assistance to the government. For this reason, the government submits that he should be sentenced to 8 to 14 months' imprisonment, which as set forth below, reflects a downward departure of four levels from the otherwise applicable Guidelines.

## I.     The Defendant's Bribery Scheme

During the period relevant to this bribery offense, Lee served as a Patrol Officer in MPD's Sixth District Police Station.  There, Lee had access to COBALT, an online electronic record management system utilized by MPD to manage reports for all incidents handled by MPD officers. This included MPD traffic crash reports, which contained information about individuals involved in traffic crashes in the District of Columbia, including their names, addresses, telephone numbers, and other identifying information.

Beginning in approximately February 2018, Lee conspired with Raquel DePaula, who was a "runner."  DePaula was in the business of soliciting accident victims on behalf of lawyers.  As a "runner" DePaula was able to identify potential clients by obtaining police reports of recent traffic accidents, referred to as traffic crash reports.  Before 2015, these reports were publicly available and could be obtained from a clerical office at MPD.  In January 2015, however, MPD issued a general order restricting the distribution of traffic crash reports to persons involved in a crash and certain family members and representatives.  The order aimed to protect crash victim confidentiality and limit solicitations by "runners."

To circumvent the general order, DePaula paid Lee cash in exchange for him providing information contained in traffic crash reports, to which he had access by virtue of his employment at MPD.  Lee would log into COBALT, search for traffic crash reports by MPD District, and write down the phone numbers, and sometimes names, of the individuals involved in the traffic accident on a piece of paper (the "Ledger").  Lee would then take a picture of the Ledger and send it to DePaula through the cell phone application "WhatsApp."  After sending the message through WhatsApp, Lee would delete the message and throw out the Ledger.  DePaula paid Lee approximately $1,000 per week in cash for information, totaling more than $15,000.

An audit of COBALT revealed that, between February 1, 2018, and January 31, 2019, Lee's COBALT account accessed traffic crash reports 11,062 times.  Each time Lee accessed the COBALT system to harvest information from these reports for personal profit, he victimized the community, eroded public confidence, and corrupted the MPD.

## II.  The Applicable Advisory Guidelines and Agreed-Upon Forfeiture

Should the Court determine that the application of U.S.S.G § 2C1.1(b)(1) is appropriate, the parties have stipulated in the plea agreement (ECF No. 7), and the Probation Office agrees, that after taking into account the defendant's acceptance of responsibility, the defendant's total offense level under the Guidelines is 15.  PSR ¶ 42.  This includes a base offense level of 14, pursuant to U.S.S.G. § 2C1.1(a)(1); an additional 2 levels because the offense involved more than one bribe, pursuant to § 2C1.1(b)(1); and an additional 4 levels because the value of the payment was more than $15,000 but less than $40,000, pursuant to § 2C1.1(b)(2) and § 2B1.1(b)(1)(C).  PSR ¶¶ 32-34.  The PSR writer agreed that the defendant should receive, pursuant to U.S.S.G. §§3E1.1(a) and (b), a 3-level reduction for acceptance of responsibility.  PSR ¶¶ 41-42.  The defendant does not have a prior criminal conviction, so his criminal history category is I, and as a result, pursuant to U.S.S.G. §§4C1.1(a) and (b), he qualifies for an additional 2-level reduction because he is a Zero-Point Offender.  PSR ¶¶ 41a, 45.  The applicable advisory Guidelines range is therefore 18 to 24 months.  PSR ¶ 95.  The defense and Government agree that a sentence within that range "would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a)."  ECF No. 5 at 4.

Additionally, as part of his plea agreement, the defendant agreed to entry of a forfeiture money judgment of $15,001.00.  ECF No. 7 at 9-10.  This represents the minimum amount of cash bribes the defendant received from DePaula, which the Government could prove beyond a

reasonable doubt if this case were to proceed to a trial. *See* ECF No. 8 at 4 ("In total, between February 1, 2018, and February 28, 2019, Lee received in excess of $15,000 in cash from [DePaula] as payment for providing him with the phone numbers and names of individuals contained in Traffic Crash Reports."). The Government will file a consent order of forfeiture before the sentencing hearing.

### III.     The Defendant's Substantial Assistance

The government moves for a downward departure under Section 5K1.1 of the Guidelines based on the defendant's substantial assistance in the investigation and prosecution of others. Specifically, Lee debriefed with the government on two occasions and assisted in the investigation. Lee's cooperation led to the successful prosecution of Raquel DePaula, who was indicted, pleaded guilty, and cooperated with the Government. DePaula's cooperation led to the successful prosecution and conviction at trial of MPD Officer Vincent Forrest. Because of Lee's substantial contributions, the government moves for a downward departure of four levels, resulting in a total offense level of 11.

The Government recommends – based on the defendant's substantial cooperation in this matter, which led to the prosecution and guilty plea of a co-conspirator – that he receive a 4-level departure pursuant to U.S.S.G. §5K1.1. A 4-level departure would result in a total offense level of 11, which results in a Guidelines range of 8-14 months, and an applicable fine range of $4,000 to $40,000. U.S.S.G. §5E1.2(c)(3).

### IV.     A Sentence of 8 to 14 months' Imprisonment is Consistent with the Factors set forth in 18 U.S.C. § 3553(a).

The goal of sentencing is to impose a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). To determine such a sentence, the Court, after accurately calculating the defendant's advisory Guidelines range, must consider the factors set forth in

§ 3553(a).  *Gall v. United States*, 552 U.S. 38, 49-50 (2007).  These factors include the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to promote respect for the law and adequate deterrence.  18 U.S.C. § 3553(a).  Here, the § 3553(a) factors and the defendant's cooperation support a sentence of 8 to 14 months' imprisonment.

The defendant's crime was damaging and extended over a long period of time.  By participating in this criminal scheme, Lee allowed DePaula to sidestep an MPD policy intended to protect the identities of traffic crash victims.  Moreover, Lee did not accept a one-off bribe; he accepted bribes routinely and repeatedly, week after week, for more than a year.

The defendant's crime was also serious.  His bribery was directed at intruding on and providing confidential information held by MPD, an important local government institution responsible for protecting the public from crime, not facilitating it.  The defendant's bribery also thwarted a policy aimed at keeping the personal information of traffic accident victims out of the hands of individuals who sought to solicit victims based on their circumstance.  It is exceedingly serious that Lee was essentially a police department official put on a secret payroll for the specific purpose of providing confidential information and evading a policy aimed at protecting that information.  The nature and circumstances of such an offense support a term of imprisonment of 8 to 14 months.

Finally, a sentence of 8 to 14 months' imprisonment in this case would promote respect for the law and provide adequate general deterrence against corruption.  *See, e.g.*, *United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013) (noting that "an important goal of sentencing in a white-collar crime prosecution" is "the need for general deterrence"); *see also United States v. Morgan*, 2015 WL 6773933, 635 Fed. App'x 423, 450-51 (10th Cir. Nov. 6, 2015) (emphasizing

the importance of general deterrence in public corruption cases, especially those involving elected officials (which this case admittedly does not involve)).   The defendant's participation in this bribery scheme betrays MPD's, along with other local government institutions', vulnerability to corruption.  That vulnerability can be reduced through adequate general deterrence.  It is important to the public welfare that public officials susceptible to corruption understand the seriousness of criminal violations of the public trust and know that such offenses will be met with significant punishment.  Likewise, the public should have confidence that the criminal justice system will protect its public institutions by holding those who set out to corrupt them appropriately accountable.  Imposing a sentence of 8 to 14 months' imprisonment will achieve those aims, promoting respect for the law and deterring similar crimes.

## **CONCLUSION**

For more than a year, Lee was on the off-the-books payroll of a "runner," corrupting the police department and undermining a policy aimed at protecting the confidentiality of accident victims.  The defendant's corruption warrants significant punishment – to punish the crime, deter it, and safeguard the public trust.  The Government therefore recommends that the Court impose a sentence of 8 to 14 months' imprisonment and a forfeiture money judgment in the amount of $15,001.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    */s/ Joshua S. Rothstein*
Joshua S. Rothstein
Assistant United States Attorney
N.Y. Bar Number 4453759
Madhu Chugh
Assistant United States Attorney
D.C. Bar Number 992122
601 D Street, N.W.
Washington, D.C. 20537
Rothstein: 202-252-7164
Joshua.Rothstein@usdoj.gov
Chugh: 202-252-6718
Madhu.Chugh@usdoj.gov